IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 21, 2024

**TYRONE E. MURPHY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Hamilton County**
**No. 313133   Barry A. Steelman, Judge**

_____

**No. E2023-01243-CCA-R3-PC**

_____

Tyrone E. Murphy, Petitioner, appeals from the Hamilton County Circuit Court's denial of his petition for post-conviction relief from his convictions for first degree premeditated murder and tampering with evidence. Petitioner contends that the post-conviction court erred in denying relief based upon his claims of ineffective assistance of trial counsel. Based on our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

John G. McDougal (on appeal), Christopher H. Jones (at post-conviction hearing), Chattanooga, Tennessee, for the appellant, Tyrone E. Murphy.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Coty Wamp, District Attorney General; and Miriam S. Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

***Factual and Procedural Background***

Petitioner's convictions relate to the June 4, 2017 stabbing death of Ashley Cates. *State v. Murphy*, No. E2020-00658-CCA-R3-CD, 2021 WL 2206538, at *1 (Tenn. Crim. App. June 1, 2021), *perm. app. denied* (Tenn. Sept. 22, 2021). The victim's mother and stepfather discovered her lying dead on the floor of her apartment in a pool of blood. *Id.*

at *2.  When officers arrived, they observed dried blood on the ground and on the doorknob of a nearby apartment on the same floor as the victim's apartment.  *Id*. at *3.  Inside the apartment, they found Petitioner "acting like he was asleep."  *Id*.  Petitioner had a "huge, freshly-stitched laceration on his hand."  *Id*.

The victim's autopsy revealed that she had been stabbed 22 times and that three of the wounds would have been fatal by themselves.  *Id*. at *6.  The victim was stabbed "with enough force to nearly sever her trachea, to penetrate her spine, to pierce all the way through her wrist, and to break off the tip of the knife into her temporal bone."  *Id*. at *14.  The medical examiner found no evidence of sexual assault, but he testified that "based on the way the blood was smeared on the victim's legs, that 'a person was trying to pull her legs apart[.]'"  *Id*.  The victim also had several defensive wounds.  *Id*.  Petitioner's DNA was discovered inside the victim's apartment, on her body, and on her driver's license.  *Id*. at *5.

Petitioner testified at trial that he acted in self-defense after the victim attacked him with two knives in the hallway outside his apartment.  *Id*. at *7.  He said his hand was cut in the struggle.  He said the victim was not "stuck until [they] got over [ ] to her door."  *Id*.  He said the struggle continued into the victim's bedroom and that was where most of the victim's injuries occurred because he was "trying to shake [the knives] off of her[.]"  *Id*.  Afterwards, Petitioner "tried to clean" the hallway because "blood was everywhere and [ ] the floor was 'unpassable.'"  *Id*.  Petitioner did not present expert DNA testimony.

The jury convicted Petitioner of first degree premeditated murder, and the trial court sentenced Petitioner to life in prison.  *Id*. at *9.  On appeal, a panel of this Court affirmed the conviction.  *Id*. at *1.  The panel concluded that the evidence that Petitioner acted with premeditation was "overwhelming."  *Id*. at *14.

Petitioner filed a timely pro se petition for post-conviction relief.  The post-conviction court appointed counsel, and appointed counsel filed an amended petition alleging that Petitioner's trial counsel were ineffective for (1) failing to consult with an expert about the victim's history of mental health problems, substance abuse, and violent behavior; and (2) failing to challenge the State's use of peremptory strikes against four black jurors.

At the post-conviction hearing, both of Petitioner's trial counsel ("counsel" and "co-counsel") testified that they worked for the Hamilton County Public Defender's Office at the time of Petitioner's trial, and both testified that they had each handled thousands of cases and several jury trials.  Counsel met with Petitioner "several times" before trial, and a defense investigator also "spent a substantial amount of time" with Petitioner.

Counsel recalled that of the four black jurors in the venire, the trial court dismissed all four for cause. One of the potential jurors said she could not view graphic photos; two expressed "religious objections to judging people"; and one said she knew the victim. Counsel testified that the jury was "all white" and that he "remember[ed] being upset because . . . it's important to have diverse points of view on a jury, particularly when you have a black defendant like [Petitioner] was."

Counsel and co-counsel reviewed the State's proof with Petitioner. They considered requesting an expert to testify at trial but did not because, counsel said, "there wasn't really a factual dispute as to whether [Petitioner] had been there, whether his DNA was there or whether there was blood where they said there was blood." Co-counsel explained, "any challenge [to] the DNA evidence would've only served to muddy the waters and more than likely weaken any self-defense claim that we made."

Counsel believed "the only possible defense was to attack premeditation" and that there was "very little [he] could've done to advance the self-defense argument if [Petitioner] didn't testify," so he and co-counsel "extensively prepared" Petitioner to testify. Counsel explained, "in a case where our theory was built around self-defense . . . [Petitioner's] credibility [wa]s incredibly important." Counsel said Petitioner's testimony "did not go well" because Petitioner did not heed their advice.

Counsel testified that Petitioner's case was "very difficult" due to the "sheer amount of evidence involved in it." Counsel testified, "I don't know what I could have done differently to have affected the outcome of [Petitioner]'s trial, if anything." Counsel did not recall any plea offers in Petitioner's case. He testified that Petitioner's age at the time of trial "was such that it would have been very difficult to settle this case on anything that wasn't a de facto life sentence for [Petitioner]."

Counsel agreed that he did not have a subpoena issued for the victim's psychiatric or mental health records and said his reasoning was, "number one, we didn't want to tip off the State that that was going to be our theory[,]" and secondly, he did not want to create sympathy for the victim by "attacking her[.]" Co-counsel recalled that a preliminary investigation into the victim's mental health history did not reveal anything. He testified they did not want "to paint a victim who ha[d] been stabbed to death as an aggressor and a drug user and trying to paint her family, who's obviously grieving through that process and still is, with mental health problems and drug abuse problems."

Petitioner testified that he had "four visits in 18 months" with counsel and co-counsel. He testified, "they were so pro-DA." He asked co-counsel to hire a DNA expert to challenge the State's DNA expert, and co-counsel "looked at [Petitioner] . . . like [he] was crazy." Petitioner said his attorneys did not prepare him to testify at trial. When asked

by the post-conviction court what would be different if Petitioner was granted a new trial, Petitioner said that "questions [would] g[e]t answered[,]" that "some motions [would be] filed[,]" and that his attorney "would just focus on what we got to work with." Petitioner did not deny that he was present in the victim's apartment. He testified, "We could base [a new] trial on self-defense." Petitioner recounted his version of the incident and testified, "I almost lost my life." He recalled that he "was slipping around in the blood . . . and was just smearing it."

The post-conviction court addressed Petitioner's claims in a written order denying relief. Regarding Petitioner's claims of ineffective assistance of counsel, the post-conviction court determined that any deficiency by counsel in not investigating the victim's history of mental illness, substance abuse, and violence was not prejudicial because Petitioner presented no such evidence at the post-conviction hearing. The post-conviction court found that all four prospective black jurors were excused for cause unrelated to the jurors' race; therefore, Petitioner's counsel were not deficient for not raising a *Batson* challenge.[1] The post-conviction court made no explicit finding as to whether trial counsel were deficient for failing to adequately meet with Petitioner, nor did the court consider whether counsel were deficient for failing to call an expert witness to challenge the State's DNA expert.

Petitioner appeals the post-conviction court's order.

### *Analysis*

On appeal, Petitioner asserts that the post-conviction court erred in dismissing his petition and that trial counsel was ineffective for (1) "[n]ot having experts to testify on blood, DNA or mental health of victim"; (2) "[n]ot challenging the strikes of the State of African American Jurors"; and (3) failing to meet with Petitioner adequately.[2] The State contends that Petitioner has waived the issues and that the post-conviction court nevertheless properly dismissed the petition.

To prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn.

---

[1] *Batson v. Kentucky*, 476 U.S. 78, 89 (1986) ("[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race of on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.").

[2] Petitioner identified other errors by the trial court and claims of ineffective assistance of counsel in his petition and amended petition for post-conviction relief that he does not pursue in this appeal; thus, Petitioner has abandoned those issues. *See Jackson v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("While the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal.").

2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this Court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.*; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, this Court "need not address both elements if the petitioner fails to demonstrate either one of them." *Kendrick*, 454 S.W.3d at 457. Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

- 5 -

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

Petitioner first argues that his attorneys met with him only four times before trial. Aside from his bare allegation that he was "prejudice[d] since [he] was found guilty[,]" Petitioner fails to state how trial counsels' performance was deficient or how they failed to adequately communicate with him about his case. Moreover, Petitioner did not present this issue in his pro se or amended petitions, and the post-conviction court, therefore, did not make any findings as to the issue in its order denying relief. Generally, appellate review is not afforded to issues not addressed by a post-conviction court, and plain error review is not available in post-conviction proceedings. *Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020); *Lane v. State*, 316 S.W.3d 555, 561-62 (Tenn. 2010); *Walsh v. State*, 166 S.W.3d 641, 645-46 (Tenn. 2005); *Grindstaff v. State*, 297 S.W.3d 208, 219 (Tenn. 2009). An appellate court "may only consider issues that were not formally raised in the post-conviction petition if the issue was argued at the post-conviction hearing and decided without objection." *Holland*, 610 S.W.3d at 548.

Counsel testified at the post-conviction hearing that he met with Petitioner "several times" before trial and that a defense investigator "spent a substantial amount of time" with Petitioner. Counsel and co-counsel reviewed discovery with Petitioner, and they "extensively prepared" him to testify at trial. Notwithstanding his waiver of the issue, Petitioner has not shown that trial counsel were deficient.

Next, Petitioner asserts that trial counsel were ineffective for failing to call expert witnesses to testify about the blood and DNA evidence or the victim's mental health. As the post-conviction court recognized, Petitioner presented no evidence at the post-conviction hearing as to the victim's history of mental illness. Neither the post-conviction court nor this Court will speculate what a witness would have said. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Moreover, counsel testified as to his strategy for not having a subpoena issued for the victim's psychiatric or mental health records, and co-counsel testified that a preliminary investigation into the victim's mental health history did not reveal anything. The record does not preponderate against the post-conviction court's conclusion that Petitioner failed to show prejudice.

As to Petitioner's assertion that trial counsel were ineffective for failing to call a DNA expert at trial, Petitioner did not present such a witness at the post-conviction hearing. *See Plyant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (citing *Black*, 794 S.W.2d at 757). Moreover, Petitioner has not alleged how a DNA expert would have advanced his defense. Counsel and co-counsel testified that there was no factual dispute as to whether Petitioner was present in the victim's apartment or that the stabbing occurred. Co-counsel believed that a challenge to the State's DNA evidence "would've only served to muddy the waters and more than likely weaken any self-defense claim that we made." Petitioner has not established that trial counsel were deficient or that he was prejudiced by any alleged deficiency.

Finally, Petitioner asserts that trial counsel were ineffective for failing to challenge the State's use of peremptory strikes against potential African-American jurors. However, Petitioner has failed to make any argument or cite any authority as to this issue in his brief to this Court. *See* Tenn. R. Ct. Crim. App. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Despite Petitioner's inadequate brief, we conclude on the merits that the record supports the post-conviction court's finding that all four prospective black jurors were excused for cause unrelated to the jurors' race and its conclusion that trial counsel were not deficient for not raising a *Batson* challenge. Petitioner is not entitled to relief.

CONCLUSION

Based on the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE